**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN W.,**[1] | ) | **No. 21 CV 6341** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | **September 23, 2024** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

John W. seeks disability insurance benefits ("DIB") asserting he is disabled by severe degenerative disc disease of the lumbar spine, psoriasis, and obesity, as well as diabetes, hypertension, and depression. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, John's remand request is denied, and the Commissioner's decision is affirmed:

**Procedural History**

John filed an application for DIB in March 2020, alleging a disability onset date of March 1, 2016. (Administrative Record ("A.R.") 13, 148-54.) His application was denied initially and upon reconsideration at the administrative level. (Id. at 13, 55-70.) John then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 13, 85-87, 102-22.) John appeared with his attorney at an April

---

[1] Pursuant to Internal Operating Procedure 22, the court uses John's first name and last initial in this opinion to protect his privacy to the extent possible.

2021 hearing, during which John and a vocational expert ("VE") testified. (Id. at 13, 27-54.) The ALJ issued her decision later that month ruling that John is not disabled. (Id. at 13-22.) The Appeals Council denied John's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). John then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 5).

## Analysis

John argues that the ALJ's residual functional capacity ("RFC") assessment is flawed because she failed to properly evaluate the opinion of his treating nurse practitioner, Sarah Smalley, and his subjective symptom statements. (R. 16, Pl.'s Br. at 2.) John contends that these errors led to an additional error at step five relating to the age category that the ALJ should have used to determine his disability status. (Id. at 13.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge

between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Yet "[a]ll [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024). To warrant reversal, a claimant must do more than "nitpick the ALJ's order." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Indeed, a claimant "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record." *Id.* Having considered the arguments and record under this standard, the court finds that the ALJ supported her decision with substantial evidence.

## A. Opinion Evaluation

The court begins with John's argument that the ALJ improperly rejected nurse practitioner Smalley's opinion. (R. 16, Pl.'s Br. at 11-12.) An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The

supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

After treating John for three months, Smalley submitted an opinion in August 2020—nearly a year after John's date last insured—indicating that he: (1) could walk less than one block, sit two hours at a time, and stand one hour at a time; (2) would have significant limitations with reaching, handling, and fingering; and (3) must be able to shift positions at will and take unscheduled breaks every one to two hours. (A.R. 497-99.) The ALJ deemed this opinion "not persuasive" because Smalley did not treat John during the applicable period, which began on March 1, 2016, and ran through September 30, 2019. (Id. at 13, 18-19.) Nor did Smalley cite to records from the relevant period, highlighting the lack of support for the opinion. (See R. 18, Govt.'s Br. at 9 (citing 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.")).) The ALJ further rejected Smalley's opinion because the objective medical

evidence was not consistent with the proposed limitations. (A.R. 20.) For support the ALJ pointed to treatment records showing that, contrary to Smalley's opinion that John could not sustain sedentary work and required upper-extremity restrictions, he had "normal gait, strength and sensation" and "no exam show[ed] deficits in upper extremities." (Id. at 18-20.) The ALJ also explained that John generally controlled his intermittent back pain with medication, and despite lumbar tenderness, he continued to have "normal gait and neurological functioning." (Id. at 18.) As such, the court finds that the ALJ supplied substantial evidence to support her evaluation of Smalley's opinion.

## B.    Symptom Assessment

John asserts that the ALJ improperly discounted his subjective symptom statements based on evidence pre-dating his disability onset date, conservative treatment, medication efficacy, and reports of staying active. (R. 16, Pl.'s Br. at 14-19.) An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). The ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom

description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

John complains that the ALJ should not have considered evidence pre-dating his alleged onset date. (R. 16, Pl.'s Br. at 14-15.) Specifically, John points to the ALJ's reliance on his ability to lift 27 pounds in May 2014, arguing that such evidence is outside the applicable period. (Id.) But the "ALJ was required to consider all relevant evidence in the record," even that pre-dating or post-dating the relevant period, as the government points out. (R. 18, Govt.'s Mem. at 6 (quoting *Zekeriya O. v. Saul*, No. 18 CV 7174, 2020 WL 2557387, at *8 (N.D. Ill. May 20, 2020) (internal quotations omitted).) Indeed, "[a] medical report from before onset (or after the insured period) often can illuminate the claimant's condition during the insured period." *Alesia v. Colvin*, No. 12 CV 8395, 2015 WL 5062812, at *6 (N.D. Ill. Aug. 26, 2015). Even so, John contends that the ALJ cherry-picked a portion of his independent medical examination, referring to the May 2014 physical therapy notes stating he could lift 27 pounds, without mentioning that the examiner limited John to lifting 10 pounds during that same evaluation. (R. 16, Pl.'s Br. at 15 (citing A.R. 509-10).) While the examiner found that John could return to work with a 10-pound lifting restriction, one month of work conditioning was preferred "to maximize recovery." (A.R. 510.) In other words, this restriction was temporary and intended to allow John to recover more fully—perhaps even "without restrictions" based on his progress. (Id.) The court finds no error here because the examination did not reflect John's "long-term functioning" and was not "particularly probative of

[John's] condition during the adjudicative period." *O'Brien v. Berryhill*, No. 17 CV 272, 2017 WL 4921960, at 6 n.6 (N.D. Ill. Oct. 31, 2017) (quoting *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015)).

John also contends that the ALJ improperly relied on "conservative treatment" in assessing his symptom statements. (R. 16, Pl.'s Br. at 15-16.) The ALJ explained that she discredited John's statements in part because he "did not undergo major surgery" during the applicable time and his treatment was "very conservative . . . since his onset date, with only medications." (A.R. 19.) The ALJ was required to consider treatment and medication efficacy, SSR 16-3p, 2017 WL 5180304, at *7-8, and the court will not substitute its judgment for that of the ALJ's as to what constitutes conservative treatment or efficacy, *Deborah M.*, 994 F.3d at 788; *see also Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (affirming ALJ's consideration of "conservative treatment" in discounting subjective symptom statements). As such, the court finds no error in the ALJ's symptom analysis on this ground.

The same is true with respect to John's argument that the ALJ erred by relying on John's report that he was trying to stay active. (R. 16, Pl.'s Br. at 16.) In her decision, the ALJ cited to John's comment to his internal medicine provider that he "tr[ies] to keep busy and stay active which helps manage the pain." (A.R. 19 (citing id. at 310).) To rely on such a report, John argues that the ALJ first would have had to render "findings about what activities [John] engaged in, his efficacy at performing those activities, the exertional demands of those activities, or the length of time [he] could sustain activities." (R. 16, Pl.'s Br at 16.) But John cites no authority

supporting this contention, and in any event, the ALJ considered John's daily activities, including driving, shopping, attending church, spending time with family and neighbors, using social media, and performing simple chores and meals, as required by SSR 16-3p, 2017 WL 5180304, at *7-8. (A.R. 16.) John thus falls short of "demonstrat[ing] with references to evidence why the ALJ's determinations lack substantial support." *Morales*, 103 F.4th at 471.

## C.  RFC Assessment

John argues that the ALJ failed to supply substantial evidence to support the RFC she crafted. (R. 16, Pl.'s Br. at 8-14.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ "must incorporate a claimant's limitations," including those that are not severe, when developing the RFC. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding that when assessing RFC, ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling"). Here, the ALJ concluded that John has the RFC to perform light work but cannot climb ladders, ropes, or scaffolds. (A.R. 17.)

John challenges the ALJ's RFC assessment on several grounds. (R. 16, Pl.'s Br. at 8-14.) He first contends that the ALJ improperly rejected all medical opinions and "bas[ed] the decision on her own lay opinion of the significance of the medical

data." (Id. at 8-9.) Relying on her own interpretation of medical evidence, rather than crediting the medical sources, constituted error, John argues. (Id. at 9.) The government disagrees, pointing out that the "ALJ has 'final responsibility' for determining a claimant's [RFC] and need not adopt any one doctor's opinion." (R. 18, Govt.'s Mem. at 9 (quoting *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021)).) This is true but "an ALJ may not selectively ignore evidence that supports a finding of disability." *Keck v. Kijakazi*, No. 22-1716, 2024 WL 3935441, at *3 (7th Cir. Aug. 26, 2024). But that is not the case here. Indeed, the ALJ supplied substantial evidence to support her evaluation of John's depression, arthritis, and other impairments, both alone and in combination. (A.R. 16-20; see also R. 18, Govt.'s Mem. at 2-10.) For example, the ALJ assessed the severity of John's depression and found that his symptoms caused no limitations, citing examination records, daily activities, and symptom statements for support. (A.R. 16-17.) The ALJ also found that a diagnosis of rheumatoid arthritis was not substantiated based on the objective medical evidence but nonetheless limited John to a light level of work to accommodate his complaints of pain. (Id. at 19.) Given the ALJ's explanations, supported by citations to record evidence, the court finds no evidence that the ALJ selectively ignored evidence supporting a contrary finding.

John next complains that the ALJ failed to consider the "entire constellation" of his impairments, including his depression, and limitations arising therefrom. (R. 16, Pl.'s Br. at 10 (internal quotations omitted).) As the government correctly points out, however, in so arguing John asks this court to reweigh the evidence,

(R. 18, Govt.'s Mem. at 3-4), which it cannot do, *see Morales*, 104 F.4th at 471 ("[T]ime and time again we have underscored that our role as a court of review is not to 'reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination.'" (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). To be sure, John cites to objective medical evidence "routinely not[ing]" his depression to dispute the ALJ's finding that his depression is non-severe and does not cause functional limitations. (R. 16, Pl.'s Br. at 10.) But the ALJ explained that John's depression symptoms "improved with psychiatric medications" and "mental status exams showed minimal deficits." (A.R. 16.) The ALJ also found no limitations in the paragraph B areas of mental functioning, noting that John "did not complain of any memory issues to his doctor," was "cooperative with appropriate mood and affect," reported that "he finishes what he starts" without mentioning difficulties maintaining attention or concentration, and "showed normal judgment." (Id. at 16-17.) The ALJ was entitled to rely on this evidence to support her paragraph B findings. Regardless, John does not identify any mental limitations supported by the record that he says should have been included in the RFC. (R. 18, Govt.'s Mem. at 4.) As such, "any error in the ALJ's [RFC] assessment would be harmless." (Id. (citing *Jozefyk*, 923 F.3d at 498).)

John further challenges the ALJ's finding that he does not suffer from arthritis. (R. 16, Pl.'s Br. at 10-11.) John alleges that the ALJ selectively cited his rheumatologist's ultimate determination that he has a negative rheumatoid factor, without mentioning that "it was entirely reasonable for [John] to believe he had [the

illness]" because his physicians diagnosed rheumatoid arthritis "routinely throughout the relevant time period." (Id. at 11.) And the rheumatologist "diagnosed osteoarthritis the very same visit" that rheumatoid arthritis was ruled out, John contends. (Id.) But the government correctly notes that "the fact that [John] had osteoarthritis did not compel the ALJ to find him more limited or conclude that [he] actually had rheumatoid arthritis." (R. 18, Govt.'s Mem. at 5.) In any event, the ALJ explained that she limited John to light work to accommodate his complaints of pain—and John cites no other restrictions warranted by the record.[2] (Id.; see also A.R. 19.) Accordingly, the court finds no error in the ALJ's evaluation of John's arthritis.

## D.    Step-Five Determination

Finally, John contends that the ALJ erred at step five by not taking advantage of "a borderline age category" to find him disabled, even though he was just two months shy of reaching the higher age category. (R. 16, Pl.'s Br. at 13-14.) The Social Security Administration's Hearing, Appeals, and Litigation Law Manual

---

[2] Although John asserts that restricting him to light work does not provide him specific limitations in sitting, standing, or walking, as supported by nurse practitioner Smalley's opinion and his own subjective reports, (R. 16, Pl.'s Br. at 11-12), the Social Security Rulings provide that light work "requires standing or walking, off and on, for a total of approximately 6 out of an 8-hour workday" with sitting occurring "intermittently during the remaining time," SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). The ALJ was not required to expand upon these well-established exertional requirements. See Jennifer L.M. v. Kijakazi, No. 20 CV 338, 2022 WL 375555, at *9 (N.D. Ill. Feb. 8, 2022) (rejecting claimant's argument that ALJ erred by not explaining what "light work" meant or "exactly how much sitting, standing, walking, lifting, and carrying" claimant could do). And as explained, the ALJ supported her evaluation of Smalley's opinion and John's symptom statements with substantial evidence.

("HALLEX") and Program Operations Manual System ("POMS") require an ALJ to explain how she considered a borderline age situation.[3]  *Reginald B. v. Comm'r of Soc. Sec.*, No. 22 CV 1369, 2023 WL 6276039, at *5-6 (S.D. Ill. Sept. 26, 2023).  An ALJ cannot "automatically" use a higher age category in a borderline situation, HALLEX I-2-2-42(C), and instead must assess the "overall impact of all factors on the claimant's ability to adjust to doing other work," 20 C.F.R. § 404.1563.  The ALJ has "discretion to be 'generous or exacting' when contemplating a borderline age situation."  *Jackson*, 2022 WL 226009, at *3.

Born on November 30, 1964, John was 54 years old on his date last insured, September 30, 2019, (A.R. 20), rendering him an individual "closely approaching advanced age" whose "ability to adjust to other work" may be "seriously affect[ed]," 20 C.F.R. § 404.1563(d).  When assessing whether the facts warranted use of the higher age category, the ALJ followed the steps enumerated in HALLEX and found that: (1) John was a high school graduate; (2) he had "a long history of work that is semi-skilled in nature" and "not in an isolated industry"; (3) this work "continued until [his] alleged onset date[,] which was just a few years before his date last

---

[3]  Circuit Courts of Appeal are split on "whether an ALJ must explicitly show" how she considered a borderline age issue, but courts in this district have held that an ALJ's failure to articulate how she addressed a borderline age issue requires a remand because "meaningful review" is not possible.  *Jackson v. Kijakazi*, No. 20 CV 4466, 2022 WL 226009, at *3 (N.D. Ill. Jan. 26, 2022) (internal quotations omitted) (collecting cases); *see also Figueroa v. Astrue*, 848 F. Supp. 2d 894, 901-02 (N.D. Ill. 2012) ("Without some minimal explanation of how a choice has been made, it would seem difficult if not impossible for there to be meaningful review of the age category determination.").  Here, John does not argue that the ALJ failed to minimally articulate the reasoning supporting her step-five finding.  (R. 16, Pl.'s Br. at 13-14.)

insured"; and (4) the occupational base would not be "significantly erode(d)" by the non-exertional restrictions in his RFC.  (A.R. 20 (citing HALLEX I-2-2-42; POMS DI 25015.006).)  Given these findings, the ALJ declined to use the higher age category, even though she acknowledged that doing so "would [have] result[ed] in a finding of 'disabled.'"  (Id.)  In so deciding, the ALJ more than minimally articulated her reasoning and supplied substantial evidence to support her decision.

John nonetheless asserts that the ALJ erred in finding that the assessed RFC—limiting him to light work with no climbing or descending ladders, ropes, or scaffolds—would not significantly erode the occupational base, arguing that this issue should have been posed to the VE at the hearing, and that without the VE's testimony on this issue, the ALJ could not "fully and fairly" develop the record.  (R. 16, Pl.'s Br. at 13-14 (citing HALLEX § I-2-6-56 (stating that ALJ must "fully and fairly develop[]" administrative record (internal quotations omitted)).)  But as the government points out, relevant Social Security Rulings "indicate that an inability to climb or descend ladders, ropes, scaffolding, and/or poles do[es] not significantly erode the medium, light, or sedentary occupational base."  (R. 18, Govt.'s Mem. at 12 (citing SSR 83-14, 1983 WL 31254, at *2, *5 (Jan. 1, 1983), and SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)).)  Indeed, SSR 83-14 states in relevant part:

> Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . .
>
> [T]here are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base.  Examples are inability to ascend or descend scaffolding, poles, and ropes. . . .
>
> In jobs at the medium level of exertion, there is more likelihood than in light work that such factors as the ability to ascend or descend ladders

> and scaffolding, kneel, and crawl will be a part of the work requirement. However, limitations of these activities would not significantly affect the occupational base.

1983 WL 31254, at *2, *5; *see also* SSR 96-9p, 1996 WL 374185, at *7 ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."). The ALJ was entitled to rely on governing rules and regulations—and to exercise discretion as to whether to be "generous or exacting" in assessing the borderline age factors. *Jackson*, 2022 WL 226009, at *3 (internal quotations omitted).

Regardless, in determining whether jobs exist in significant numbers, the ALJ noted that she asked the VE the extent to which limitations would erode "the unskilled light occupational base." (A.R. 21.) Based on the VE's testimony, identifying available jobs such as mail clerk (79,000), inspector/hand packager (63,000), and garment sorter (60,000), the ALJ concluded that John "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Id.) Having adequately explained how the evidence led to her conclusion, the ALJ's step-five determination must be affirmed.

## Conclusion

For the foregoing reasons, John's request for a remand is denied, and the Commissioner's decision is affirmed.

ENTER:

**Young B. Kim**
**United States Magistrate**